Filed 1/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WALEED ELSHEREF, a Minor, etc., et al., | H038333 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-10-CV170736) |
| v. | |
| APPLIED MATERIALS, INC., | |
| Defendant and Respondent. | |

In this appeal we consider the circumstances under which a legal duty of care is owed to a later-conceived child. In particular, we consider whether an employer owes a legal duty of care to the subsequently-conceived child of its employee.

Plaintiffs Waleed Elsheref (Waleed), a minor, and his mother, Zainab Musbah, appeal from a judgment entered in favor of defendant Applied Materials, Inc. (AMI) on their preconception tort claims.[1] Prior to and during Zainab's pregnancy with Waleed, Waleed's father and guardian ad litem, Khaled Elsheref (Khaled), worked as an engineer at AMI's semiconductor manufacturing facility. Waleed was born with a number of birth defects allegedly caused by Khaled's exposure to toxic chemicals at AMI. Waleed sought compensation for those injuries, while Zainab sought to recover for emotional distress suffered in connection with her son's injuries.

The court granted summary adjudication to AMI on the ground that it owed no legal duty to plaintiffs. We conclude that AMI did not owe a preconception duty to

---

[1] We will refer to the parties by their given names for purposes of clarity and not out of disrespect. (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 495, fn. 1.)

Waleed.  However, we also conclude that lack of duty was not fatal to Waleed's strict products liability claim.  Accordingly, we reverse the judgment with directions.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

## A.    *Khaled's Employment at AMI*

AMI provides equipment, services, and software to enable the manufacture of advanced semiconductor, flat panel display, and solar photovoltaic products.  AMI employed Khaled from 2001 to 2008.  Khaled's job duties included working with tools containing mercury and ethylene glycol, among other chemicals, as well as tools emitting ionizing radiation.

AMI provided its employees with information and training concerning the chemicals in their tools and related hazards.  AMI also employs industrial hygienists to protect worker health and safety by assessing and reducing potential workplace hazards and communicating those hazards to employees.  AMI employs nurses to provide on-site health services.

In 2001, AMI sent Khaled to be examined by a physician, as required by state and federal regulations, for authorization to wear a respirator at work.  In connection with that examination, Khaled filled out a health history questionnaire that included questions about his reproductive history, such as whether his spouse ever had a miscarriage, a child with a birth defect, or difficulty becoming pregnant.  The questionnaire instructed Khaled not to provide his responses to AMI.

Concerns that a tool used by Khaled's group might be leaking mercury prompted AMI to perform an industrial hygiene assessment in 2003.  A report completed by

---

[2] We take the relevant facts from the record that was before the trial court when it ruled upon AMI summary adjudication motion.  (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034-1035.)  Unless otherwise noted, the facts recited herein are undisputed.  Where the facts are in dispute, we recount plaintiffs' version of the facts.

2

Michelle Lan, a certified industrial hygienist employed by AMI, indicated that the assessment detected no levels of mercury in the breathing zone. The report directed measures for limiting dermal exposure to mercury when the mercury in the tool is replaced.

While Khaled worked at AMI, his wife Zainab conceived and gave birth to their son Waleed.

### B. *The First Amended Complaint*

In the operative first amended complaint, plaintiffs alleged that Waleed was born with birth defects--including ventricular septal defect, dysplastic aortic valve, coarctation of the aorta, sub aortic stenosis, scheon complex with multiple congenital heart defects, hyperbilirubinemia, bilateral hydronephrosis, and vesicoureteral flow reflux--caused by his father's exposure to teratogenic, genotoxic, and reproductively toxic chemicals and processes during his employment with AMI. Plaintiffs alleged that AMI knew or should have known about the hazardous nature of the chemicals and processes to which its employees, including Khaled, were exposed; failed to adequately protect its employees, including Khaled, from such exposure; concealed and/or misrepresented the nature of the chemicals; and failed to warn its employees about the nature of the chemicals and processes. Plaintiffs further alleged that AMI had "actual or constructive knowledge that serious injury, including teratogenic, genotoxic and reproductive harm . . . , was a probable result of exposing their employees and their unborn or future children to harmful chemicals and processes."

The complaint asserted six causes of action on behalf of Waleed for negligence, strict liability/ultrahazardous activity, willful misconduct, misrepresentation, premises liability, and strict products liability. Zainab asserted claims for negligent and intentional infliction of emotional distress.

3

### C. *AMI's Motion for Summary Adjudication as to the Existence of a Duty*

AMI moved for summary adjudication, seeking a ruling that it did not owe a duty of care to plaintiffs for preconception injuries. Specifically, AMI argued that it lacked any duty to its employees' future children because, under California law, only medical professionals and manufacturers of products related to conception or pregnancy have been held to owe a duty of care to later-conceived children.

In support of its motion, AMI submitted the declaration of Lan, who stated that AMI neither "provide[d] medical services to Khaled Elsheref related to conception or pregnancy," nor "manufacture[d] or provide[d] any products to Khaled Elsheref related to conception or pregnancy."

### D. *Plaintiffs' Opposition*

Plaintiffs opposed the motion, arguing that AMI owed a duty to Waleed because (1) AMI offered reproduction-related health services to Khaled; (2) a "special relationship" exists between employers and employees under California law requiring employers to protect their employees' offspring from harm; (3) Waleed's injuries were reasonably foreseeable; and (4) AMI assumed a duty to protect its employees' offspring from harm by providing health services to its employees. Plaintiffs also argued that AMI's motion did not dispose of Waleed's sixth cause of action for strict products liability because that claim does not turn on the use of due care.

In support of its contention that AMI provided Khaled with reproduction-related health services, plaintiffs relied on the medical questionnaire Khaled filled out and submitted to an outside doctor in 2001. They also pointed to Lan's deposition testimony that AMI employs industrial hygienists who assess workplace hazards and nurses who provide unspecified health services. Finally, plaintiffs submitted the declaration of Robert Harrison, M.D., an occupational health physician. Dr. Harrison treats patients for workplace chemical exposure at the University of California, San Francisco, and is the Chief of Occupational Health Surveillance and Evaluation Program for the California

4

Department of Public Health.  Dr. Harrison stated that AMI (1) was or should have been aware of the reproductive hazards posed by the chemicals used by its employees, (2) provided on-site health services to employees, and (3) sent Khaled to an outside physician and required him to fill out a questionnaire that included questions about his reproductive history.  Based on that information, Dr. Harrison concluded that AMI provided occupational health care services to Khaled that were "directly related to reproduction and having healthy offspring."

With respect to their claim that a "special relationship" exists between employers and employees in California, plaintiffs pointed to various provisions of the Labor Code that impose obligations on employers related to employee health and safety, as well as to the disclosure obligations imposed by the California Hazardous Substances Information and Training Act.  (Lab. Code, § 6360 et seq.)

To show that Waleed's injuries were foreseeable to AMI, plaintiffs relied on Dr. Harrison's declaration, which discussed state and federal materials dating back to the 1980s and 1990s warning of the reproductive hazards associated with glycol ethers like ethylene glycol.  The declaration also referred to a 1982 warning issued by the Semiconductor Industry Association, a trade association, to semiconductor executives stating that glycol ethers could cause reproductive harm.  With respect to mercury, Dr. Harrison pointed to a 1987 article in the Journal of the Semiconductor Safety Association indicating that mercury can cause nervous system defects in offspring.  The declaration also discussed studies published in the 1990s connecting paternal exposure to radiation with defects and illness in children.  Finally, Dr. Harrison's declaration discussed studies carried out in the 1980s and 1990s describing reproductive problems encountered by semiconductor industry employees and their wives.  Plaintiffs also relied on Lan's testimony that glycol ethers were known to cause adverse reproductive effects in men and women exposed to them as early as the 1980s.

In connection with their contention that AMI assumed a duty to protect its employees' offspring from harm, plaintiffs relied on evidence that AMI provides on-site health services and required that Khaled have a physical exam and fill out a health questionnaire. Plaintiffs also pointed to Lan's testimony that (1) AMI attempts to eliminate employee-exposure to genotoxic and/or reproductive hazard chemicals; (2) she considers it her job to eliminate employee-exposure to genotoxic and/or reproductive hazard chemicals; and (3) in her view, it is reasonable for AMI employees to expect that AMI will not put them at risk for having children with birth defects.

### E.    *The Trial Court's Order*

The trial court granted AMI's motion for summary adjudication in an order dated December 30, 2011. After concluding that each of plaintiffs' causes of action was predicated on an alleged duty owed by AMI to employees' unborn and future children, the court held that AMI had met its initial burden of demonstrating it owed no such duty. In support of that holding, the court cited cases stating that California courts have not imposed a preconception duty on defendants that are not medical professionals or manufacturers of reproduction-related products, including *Hegyes v. Unjian Enterprises, Inc.* (1991) 234 Cal.App.3d 1103 (*Hegyes*) and a number of federal cases applying California law. The court concluded that plaintiffs did not demonstrate the existence of a triable issue of material fact, and granted the motion.

### G.    *The Stipulation and Final Judgment*

On March 26, 2012, plaintiffs agreed by stipulation to dismiss with prejudice any claims they "may" have against AMI that "were not subject to" the trial court's summary adjudication order, including claims based on alleged postconception exposures. The following day the court entered judgment in favor of AMI on all of plaintiffs' causes of action. Plaintiffs timely appealed on May 18, 2012.

## II. DISCUSSION

### A. *The Standard of Review*

In reviewing an order granting summary adjudication of issues, we are governed by the rules generally applicable to review of summary judgments. (See *Tauber–Arons Auctioneers Co. v. Superior Court* (1980) 101 Cal.App.3d 268, 273.) Accordingly, we review the entire record de novo to determine whether the moving and opposing papers show a triable issue of material fact. (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.)

### B. *Governing Legal Principles*

#### 1. *Preconception Tort Case Law*

In *Turpin v. Sortini* (1982) 31 Cal.3d 220 (*Turpin*), the Supreme Court recognized a cause of action for a preconception tort, stating that a child is "entitled to recover against the negligent party" (*id.* at p. 231) for injuries "caused by negligent treatment of her mother during pregnancy, or . . . result[ing] from a tort committed upon her mother before conception." (*Ibid.*) Plaintiffs rely heavily on the quoted language from *Turpin*, but the case is of little assistance to our duty inquiry.

The plaintiff in *Turpin* asserted a " 'wrongful life' " claim, arguing that but for the medical professional defendants' negligence, she would not have been born. As the court explained, the claim was a species of a medical malpractice action. (*Turpin*, *supra*, 31 Cal.3d at p. 229.) The defendants did not dispute duty, breach, or causation, arguing instead that plaintiff had not alleged a legally cognizable injury. (*Id.* at p. 230.) Accordingly, the court said little about the circumstances under which a preconception duty is owed, except to note that "[i]n cases involving contagious diseases, doctors have frequently been found to owe a duty of care to a patient's immediate family." (*Id.* at p. 230, fn. 7.) At best, then, the case indicates that a doctor's duty of care may extend to a patient's unborn family members who foreseeably could be harmed by the doctor's negligence.

7

In *Hegyes*, the court examined California law and determined that a preconception "duty has never been found, nor has liability been imposed, in a preconception negligence case where defendant was not a medical professional or product liability manufacturer." (*Hegyes*, *supra*, 234 Cal.App.3d at p. 1113.) The court noted that in cases where a duty has been imposed, "[t]he defendant's conduct . . . [was] inextricably related to the inevitable future pregnancy." (*Id*. at p. 1114.) The *Hegyes* plaintiff sought to recover for injuries related to her premature birth, which resulted from a shunt doctors fitted her mother with following a car accident that occurred years before plaintiff's conception. The *Hegyes* plaintiff claimed the negligence of the other motorist in that accident proximately caused her injuries. The court held the motorist owed plaintiff no preconception duty because no " 'special relationship' " exists between motorists and the child's injury was not foreseeable. (*Id*. at pp. 1119, 1133.)

While *Hegyes* is instructive, it is not dispositive, as AMI contends, because the existence of a duty is determined on a case-by-case basis. (*Parsons v. Crown Disposal Co*. (1997) 15 Cal.4th 456, 472.) Therefore, that no California court ever has determined that a defendant who is neither a medical professional nor a product manufacturer owed a duty to a subsequently-conceived child does not mean no such duty exists under the facts of this case. To determine whether AMI owed Waleed a duty of care, we look to California's general duty jurisprudence.

2. *Duty*

As a general rule, each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112; Civ. Code, § 1714.) " 'Courts, however, have invoked the concept of duty to limit generally "the otherwise potentially infinite liability which would follow from every negligent act . . . ." ' " (*Bily v. Arthur Young & Co*. (1992) 3 Cal.4th 370, 397.) As noted, whether a legal duty of care exists " 'is a question of law to be determined on a case-by-case basis.' " (*Parsons v. Crown*

8

*Disposal Co.*, *supra*, 15 Cal.4th at p. 472.) This determination calls for a balancing of the so-called "*Rowland* factors," which include the " 'foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 675, fn. 5, quoting *Rowland v. Christian*, *supra*, 69 Cal.2d at p. 113.) The court's task in determining whether a duty exists "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6.)

### C. *AMI Did Not Owe Waleed a Preconception Duty of Care*

#### 1. *Application of the Rowland Factors Counsel Against Finding a Duty*

Our analysis begins with the first *Rowland* factor--foreseeability. Plaintiffs submitted evidence indicating that those in the semiconductor industry knew as early as the 1980s that certain of the chemicals to which Khaled allegedly was exposed may cause reproductive harm. Even if we assume that it is foreseeable that the children of semiconductor industry workers who are exposed to those chemicals will suffer birth defects, "[f]oreseeability of injury . . . is but one factor to be considered in the imposition of negligence liability." (*Bily v. Arthur Young & Co.*, *supra*, 3 Cal.4th at p. 398.) "[P]olicy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk . . . for the sound reason that the consequences of a negligent act must be limited in order to avoid an intolerable burden on society." (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 274, fn. omitted.) Therefore, we turn to the other *Rowland* factors.

Some of those factors weigh in favor of finding a duty on the part of AMI, including the policy of preventing future harm and the "moral blame" factor, given plaintiffs' allegations that AMI had actual or constructive knowledge of the harmful consequences of its conduct. (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 337-338.) But the remaining factors weigh more strongly against a finding of duty here. We conclude there was not a "close" connection between AMI's conduct and Waleed's injuries. (*Rowland v. Christian, supra*, 69 Cal.2d at p. 113.) AMI's allegedly culpable conduct all relates to its treatment of Waleed's father, Khaled, making the connection between that conduct and Waleed's injury somewhat attenuated. With respect to the burden on AMI, we are cognizant that "imposing a duty [on employers] toward nonemployee persons saddles the defendant employer with a burden of uncertain but potentially very large scope." (*Oddone v. Superior Court* (2009) 179 Cal.App.4th 813, 822; see also *Widera v. Ettco Wire & Cable Corp.* (N.Y.App.Div. 1994) 204 A.D.2d 306, 307 [declining to find that employer owed preconception duty to child exposed in utero to toxic chemicals on father-employee's work clothes because doing so would "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs"].) "One of the consequences to the community of such an extension [of liability] is the cost of insuring against liability of unknown but potentially massive dimension. Ultimately, such costs are borne by the consumer. In short, the burden on the defendant is substantial and the costs to the community may be considerable." (*Oddone v. Superior Court, supra*, at p. 822.)

In view of all of the *Rowland* factors discussed above and the "overwhelming need to keep liability within reasonable bounds," we conclude a common law duty of care should not be imposed on AMI in the circumstances of this case. (*Hegyes, supra*, 234 Cal.App.3d at p. 1114.) However, the inquiry regarding duty of care does not end there, as plaintiffs also argue AMI owed Waleed a duty based on a "special relationship" and because it assumed such a duty. We address these contentions below.

10

## 2. *Special Relationship*

Plaintiffs seek to distinguish *Hegyes* by noting that they alleged the existence of a "special relationship" between AMI and Khaled, which they argue arose from AMI's statutory obligations to furnish a safe and healthful workplace for its employees. Plaintiffs do not cite any cases in support of this argument, let alone identify a case finding a special relationship in similar circumstances. Accordingly, we consider the argument to be abandoned. (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119-1120 [we may properly treat as abandoned arguments that are unsupported by citation to authority or by "any pertinent or intelligible legal argument"].)

Even if the argument that a "special relationship" existed between AMI and Khaled were not abandoned, it would not carry the day. In *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 436, the Supreme Court held that the "special relationship" between a doctor and a patient "may support affirmative duties for the benefit of third persons. Thus, for example, . . . [a] doctor must . . . warn a patient if the patient's condition or medication renders certain conduct, such as driving a car, dangerous to others." (Fn. omitted.) Presumably, plaintiffs' theory is that the alleged special relationship between AMI and Khaled obligated AMI to warn Khaled that certain workplace chemicals posed a danger to his unborn children. We decline to find a special relationship giving rise to such a duty for the same policy reasons that led us to conclude no duty exists under *Rowland*. (See *Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 646 ["to say that a 'special relationship' exists [or does not exist] is to say nothing other than the [*Rowland*] factors favoring imposition of a duty of care in particular circumstances outweigh [or do not outweigh] the countervailing factors."]; *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 285 ["the question of duty must not ignore matters of policy regardless of whether the duty purportedly arises under the special relationship doctrine."].)

11

### 3. Assumption of a Duty

Finally, plaintiffs argue AMI undertook to protect its employees' future children from harmful exposures capable of causing birth defects by employing industrial hygienists to reduce workplace hazards and nurses to provide unspecified medical services, as well as by sending Khaled for a medical examination where he completed a questionnaire containing questions about his reproductive history.[3] We disagree.

" '[I]n order for liability to be imposed upon the actor' " under a negligent undertaking theory, " 'he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614-615.) "[T]he scope of any duty assumed depends upon the nature of the undertaking." (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 249.)

The services plaintiffs allege AMI undertook to provide were not provided to Waleed, but to Khaled. Nor did those services directly concern Khaled's reproductive health, as plaintiffs claim. For example, there is no evidence the nurses AMI employs provide medical services connected to reproductive health. And it is undisputed that the purpose of Khaled's AMI-sponsored medical examination was to obtain clearance to wear a respirator at work. That Khaled disclosed information about his reproductive history as part of a standard questionnaire at that examination does not suggest the examination had anything to do with evaluating or safeguarding Khaled's reproductive health, or the health of his future children. (*Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 559 [where employer requires employee to submit to a physical examination,

---

[3] Plaintiffs also claim AMI made "assurances to Khaled and his fellow workers that its health and safety staff were effectively safeguarding against reproductive hazards," but they identify no such statements in the record.

12

whether employer thereby assumes a duty to discover a diseased condition depends on the purpose of the examination].)

Under these circumstances, we cannot find AMI assumed a duty to safeguard Waleed's health. To conclude otherwise would mean that every employer that complies with state law requiring the protection of employee health and safety thereby assumes a duty to protect the health and safety of its employees' family members. For the reasons stated above, we decline to expose employers to such potentially boundless liability.

### D. *Duty Is Not An Element of Plaintiffs' Strict Products Liability Claim*

Plaintiffs contend that even if AMI did not owe Waleed a preconception duty of care, the court erred by granting summary adjudication of their strict products liability, strict liability/ultrahazardous activity, willful misconduct, misrepresentation, and intentional infliction of emotional distress claims, which they say do not sound in negligence. According to plaintiffs, duty is not an element of those claims, such that they were not properly resolved by way of AMI's motion.

As an initial matter, we consider whether plaintiffs waived this argument by failing to raise it below, as AMI contends. In its opposition to AMI's summary adjudication motion, plaintiffs argued AMI's motion "overlook[ed]" their "claims sounding in strict products liability . . . embodied in the sixth count of the" complaint, under which liability may be imposed "regardless of 'privity, foreseeability or due care.' " We read plaintiffs' opposition as preserving the argument that lack of duty is not fatal to a strict products liability claim. However, because plaintiffs expressly limited that argument to Waleed's strict products liability cause of action, we conclude the argument is waived as to plaintiffs' other claims. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."].)

AMI relies on a footnote in *Allabach v. Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007 for its argument that duty is an element of a products liability claim. In

that case, this court stated that "[t]he duty element likewise exists within strict liability tort theories as strict liability is merely a species of negligence that is 'viewed as a "short cut" to liability where negligence may be present but may be difficult to prove.' " (*Id.* at p. 1011, fn. 1, quoting *Milwaukee Electric Tool Corp. v. Superior Court* (1993) 15 Cal.App.4th 547, 556 (*Milwaukee Tool*).)

In *Milwaukee Tool*, the court analyzed whether the defendant-manufacturer in a strict products liability case could assert an implied assumption of risk defense by considering whether the defendant owed the plaintiff a duty of care. The court reasoned that the duty analysis applied because " 'a manufacturer has a duty, i.e., a responsibility, to provide consumers with defect-free products; that duty underlies strict product liability.' [Citation.] Although strict products liability causes of action need not be pled in terms of classic negligence elements (duty, breach, causation and damages), the concept of a manufacturer's duty to provide defect-free products is inherent in the usual form of pleading of a strict liability cause of action." (*Milwaukee Tool*, *supra*, 15 Cal.App.4th at p. 559.) The court also characterized "[s]trict products liability theory . . . as a 'short cut' to liability where negligence may be present but may be difficult to prove." (*Id.* at p. 556.)

*Milwaukee Tool* did not hold that the existence of a duty is an element of a strict products liability claim that a plaintiff must plead and prove. To the contrary, the court recognized that "strict products liability causes of action need not be pled in terms of classic negligence elements (duty, breach, causation and damages)." (*Milwaukee Tool*, *supra*, 15 Cal.App.4th at p. 559; see also *Ford v. Polaris Industries*, *Inc.* (2006) 139 Cal.App.4th 755, 768 ["*Milwaukee Tool* . . . concluded that . . . the [strict products liability] doctrine is not pled in terms of classic negligence."].) To hold otherwise would be to eliminate the strict products liability theory "short cut" altogether.

Like *Milwaukee Tool*, *Allabach* involved the doctrine of assumption of risk. Accordingly, in the footnote relied upon by AMI, this court cited *Milwaukee Tool* for its

conclusion that the duty analysis may properly be applied to decide whether a defendant may assert assumption of the risk as a defense to a strict products liability claim. We did not intend to suggest that duty is an element of a strict products liability claim that must be pleaded and proved, and we disavow any such reading of that case. For the foregoing reasons, we conclude that the lack of any preconception duty is not fatal to Waleed's strict products liability claim.

AMI also argues that, to the extent any of plaintiffs' claims did not hinge on a preconception duty, plaintiffs stipulated to the dismissal of those nonduty theories. We disagree. It is clear from the court's summary adjudication order that it agreed with AMI's contention that each of plaintiffs' causes of action was premised on a preconception duty. The stipulation applies only to those claims plaintiffs "may have" that "were *not* subject to" the summary adjudication order. (Italics added.)

For the foregoing reasons, the trial court below erred by entering judgment in AMI's favor on count 6 of the first amended complaint.

## III.    DISPOSITION

The judgment is reversed. The trial court is directed to set aside its order granting Applied Materials Inc.'s motion for summary adjudication and enter a new order (1) granting Applied Materials Inc.'s motion as to all causes of action except count 6, the cause of action for strict products liability; and (2) denying Applied Materials Inc.'s motion as to the cause of action for strict products liability. The parties shall bear their own costs on appeal.

Premo, J.

WE CONCUR:

Rushing, P.J.

Elia, J.

15

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-10-CV170736 |
| Trial Judge: | Hon. Mark Pierce |
| Counsel for Plaintiffs/Appellants:<br>Waleed Elsheref, Khaled Elsheref,<br>Zainab Musbah | Waters Kraus & Paul<br>Michael B. Gurien |
| Counsel for Defendant/Respondent:<br>Applied Materials, Inc. | Paul Hastings<br>John P. Phillips<br>Peter C. Meier<br>Emily Dodds Powell |

Elsheref, a Minor, etc., et al. v. Applied Materials, Inc.