Filed 1/25/16  McGhee v Telecare Corp. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ERINA McGHEE, Individually and as Executor, etc., | C075361 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0028990) |
| v. | |
| TELECARE CORPORATION, | |
| Defendant and Respondent. | |

Plaintiff Erina McGhee sued defendant Telecare Corporation (Telecare) for the wrongful death of her husband, who was murdered by his friend, Brad Miller, three weeks after Miller had been released by Telecare from a 72-hour hold under Welfare and Institutions Code section 5150.[1]

---

[1]   Further statutory references to sections of an undesignated code are to the Welfare and Institutions Code.

1

The trial court sustained Telecare's demurrer on the ground the first amended complaint failed to establish Telecare owed any duty to plaintiff. Plaintiff argues Telecare had a duty to inform local law enforcement that Miller owned a gun, and to inform plaintiff's husband, Eric McGhee, that Miller could not legally possess a gun after being placed on a 72-hour hold.

We shall conclude that to the extent plaintiff claims Telecare's liability is vicarious, Telecare is immune from suit under Civil Code section 43.92. We may also infer from Civil Code section 43.92 and the detailed provisions of sections 8100 through 8108, that the Legislature did not intend to impose a duty on Telecare to disclose information to any entity other than the Department of Justice, and that no overwhelming public policy exists that would require such disclosure. We will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Eric McGhee took his friend Brad Miller to the Sutter Roseville Medical Center (Sutter) emergency department on the afternoon of March 21, 2010. Miller had been living with McGhee for the past month. McGhee reported that he found Miller sitting on the couch in the living room, pointing a gun at his own head.

A mental health crisis worker at Sutter, who was working for defendant Telecare, evaluated Miller and placed him on a 72-hour hold pursuant to section 5150 because he was a danger to himself.[2] Miller was transferred to Placer County Cirby Hills Psychiatric

---

[2] "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services." (§ 5150, subd. (a).)

2

Facility, an inpatient psychological facility which defendant Telecare operates on behalf of Placer County.

Miller was discharged on March 23, 2010, following examination, evaluation, and treatment. Prior to Miller's discharge, Telecare sent a "Confidential Mental Health Facilities Report of Firearms Prohibition" to the Department of Justice, as required by section 8103, former subdivision (f)(2).[3] There is no claim that Telecare was negligent in discharging Miller.

Almost three weeks after his discharge, Miller shot and killed Eric McGhee.

Eric McGhee's wife, Erina McGhee, filed this action against, inter alia, Telecare, alleging a cause of action for wrongful death. The complaint alleged that Telecare should have notified local law enforcement that Miller had a gun. Telecare moved for summary judgment on the ground it had no legal duty to notify local law enforcement that Miller

---

[3]  Section 8103, former subdivision (f) provides in pertinent part:

"(1)  No person who has been (A) taken into custody as provided in Section 5150 because that person is a danger to himself, herself, or to others, . . . shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility. . . .

"(2)  For each person subject to this subdivision, the facility shall immediately, on the date of admission, submit a report to the Department of Justice, on a form prescribed by the Department of Justice, containing information that includes, but is not limited to, the identity of the person and the legal grounds upon which the person was admitted to the facility.

"Any report prescribed by this subdivision shall be confidential, except for purposes of the court proceedings described in this subdivision and for determining the eligibility of the person to own, possess, control, receive, or purchase a firearm."  (§ 8103, former subd. (f); see Stats. 1999, ch. 578, § 1.)

3

had been placed on a 72-hour hold or that he had a gun. Before the summary judgment motion was heard, plaintiff requested leave to amend the complaint.

The trial court heard the summary judgment motion and motion to amend together. The trial court found that the complaint, "fails to allege that defendant had any statutory duty to notify a law enforcement agency to trigger the confiscation of defendant Miller's firearms under Welfare & Institutions Code § 8102.[4] Absent factual allegations to support a duty to notify law enforcement, the defendant owes no duty to the plaintiff." Nevertheless, the trial court granted the motion to amend the complaint.

The first amended complaint again alleged a cause of action against Telecare for wrongful death. Plaintiff alleged Telecare breached its duty of care when it: (1) "failed to notify any law enforcement agency that MILLER had a gun at his residence, so that it could be confiscated prior to MILLER's release;" and (2) "failed to warn the Decedent, ERIC MCGHEE, that MILLER was legally prohibited from owning, possessing, controlling, receiving, or purchasing, or attempting to own, possess, control, receive, or purchase, any firearm for a period of five years after his or her release, and that MCGHEE should therefore contact a law enforcement agency so that it could confiscate MILLER's gun."

Telecare demurred to plaintiffs' first amended complaint on the ground that it had no duty to notify local law enforcement of Miller's gun possession. The trial court sustained the demurrer on the ground the first amended complaint failed to allege

---

**4** Section 8102, subdivision (a) provides in part: "Whenever a person, who has been detained or apprehended for examination of his or her mental condition or who is a person described in Section 8100 or 8103, is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon."

4

sufficient facts establishing that Telecare owed any duty, including a duty to warn Eric McGhee.  Plaintiff appealed from the judgment dismissing the complaint.

DISCUSSION

I

Immunity

Plaintiff attempts to craft a duty on the part of Telecare based on the public policy behind the legislation allowing law enforcement to confiscate the firearms of a person who has been placed on a 72-hour hold.  No statute imposes such a duty, and we will not judicially create such a duty in light of legislation indicating an intent to limit the liability of mental health professionals providing psychotherapy treatment to persons who later commit crimes.

There is no statutory obligation on the part of a person or entity providing psychotherapy services to notify local law enforcement that a patient has or is suspected of having a gun.  At the time of the incident, Telecare was statutorily obligated pursuant to section 8103, former subdivision (f)(2) to submit a report to the Department of Justice identifying any person taken into custody as provided in section 5150 because that person was a danger to himself or to others.  Plaintiff does not dispute that Telecare performed this obligation.

The Legislature, far from indicating an intent to impose a broad duty on mental health care workers for the violence inflicted by their patients, has instead passed legislation narrowing the scope of a psychotherapist's duty.  Civil Code section 43.92 provides in pertinent part:  "There shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is a psychotherapist as defined in Section 1010 of the Evidence Code in failing to protect from a patient's threatened violent behavior or failing to predict and protect from a patient's violent behavior except if the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims."  Plaintiff claims that the

5

serious threat and reasonably identifiable victim limitations on liability apply only to failure to warn cases. However, Civil Code section 43.92 by its own terms applies broadly to limit liability for failing to "protect" or to "predict and protect," not merely to failure to warn.

Civil Code section 43.92 was a legislative reaction to *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*). (*Ewing v. Goldstein* (2004) 120 Cal.App.4th 807, 815.) *Tarasoff* held that the parents of a murdered girl could state a cause of action against a psychologist and the hospital for whom he worked when the psychologist failed to warn that his patient had threatened to kill the girl. It held that the special relationship between a doctor or psychotherapist and patient could support affirmative duties for the benefit of third persons. (*Tarasoff*, at p. 436.) Thus, the parents could state a cause of action for negligent failure to protect the girl. (*Id*. at p. 433.)

Against this backdrop of potentially broad liability on the part of those who treat the mentally disturbed, the Legislature sharply limited the scope of liability for psychotherapists as defined by statute. After the passage of Civil Code section 43.92, there is no liability absent a serious threat of physical violence against a reasonably identifiable victim. This statutory immunity protects those providing psychotherapy services from facing liability for failing to act on information they receive about a patient in the course of providing those services. In this case, the information about Miller's weapons was information given to the Telecare workers in the course of Miller's treatment, and there is no claim that Telecare had knowledge of a serious threat to a reasonably identifiable victim.

The immunity provided by Civil Code section 43.92 is limited to psychotherapists as defined in Evidence Code section 1010. As defined, a psychotherapist includes a doctor practicing psychiatry, a licensed psychologist, a licensed clinical social worker, a school psychologist, a licensed marriage and family therapist, a registered psychological assistant, a registered marriage and family therapist intern, an associate clinical social

6

worker, a person who is exempt for the Psychology Licensing Law who is under the supervision of a licensed psychologist or board certified psychiatrist, a psychological intern, a marriage and family therapist trainee, a psychiatric-mental health nurse, a clinical nurse specialist in psychiatric-mental health nursing, a person rendering mental health treatment under Family Code section 6924, a licensed professional clinical counselor, a registered clinical counselor intern, or a clinical counselor trainee. (Evid. Code, § 1010.)

Noticeably absent is the entity named as a defendant here, i.e., the company for whom the psychotherapist works. To the extent plaintiff seeks to impose liability on Telecare via the doctrine of respondeat superior, Telecare cannot be held liable if its employees are immune. (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1423.)

As for Telecare's liability for its own actions, while there is no statutory immunity that is strictly applicable, we may imply from the legislation in this area, a legislative intent to extend immunity to a corporation such as Telecare. A corporation is "a legal fiction that cannot act at all except through its employees and agents." (*Black v. Bank of America* (1994) 30 Cal.App.4th 1, 5.) Evidence Code section 1014, relating to the psychotherapist-patient privilege and closely associated with the definition of a psychotherapist in Evidence Code section 1010, provides in pertinent part that "[t]he relationship of a psychotherapist and patient shall exist between a psychological corporation . . . , a marriage and family therapist corporation . . . , a licensed clinical social workers corporation . . . , or a professional clinical counselor corporation . . . and the patient to whom it renders professional services, as well as between those patients and psychotherapists employed by those corporations to render services to those patients." Additionally, section 8108 states that "[m]ental hospitals, health facilities, or other institutions, or treating health professionals or psychotherapists who provide reports subject to this chapter shall be civilly immune for making any report required or

authorized by this chapter." If such entities are immune from liability for reports they are required to make, it follows that they enjoy immunity for reports they are not required to make.

Even if no statutory immunity applies to Telecare, the Legislature has sent a signal that it did not intend to impose liability in this situation, despite the state's interest in keeping firearms out of the hands of the mentally ill. The immunity statute thus informs our discussion below of Telecare's duty.

## II
## Duty
### A. Duty to Control

Despite plaintiff's claim, this is not a failure to control case, i.e., one in which the duty is premised on the defendant's failure to control the actions of a third person. "[W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person . . . the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim." (*Tarasoff, supra*, 17 Cal.3d at p. 435.) Where the claim, as here, is that the duty arose because the defendant took charge of a person the defendant knew or should have known to be likely to cause bodily harm to others if not controlled, any finding of duty requires that the defendant had the ability to control the other person's conduct, and that the defendant had a duty of care under the *Rowland v. Christian*[5] factors considered below. (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 473-474.)

---

[5]  *Rowland v. Christian* (1968) 69 Cal.2d 108, partially superseded by statute on a different issue as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 722, disapproved on a different issue in *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 853, footnote 19.

Telecare had no ability to control Miller after releasing him from the 72-hour hold. Miller had not been a patient of Telecare for almost three weeks when he killed Eric McGhee. Furthermore, there is no claim that Telecare should have continued to exercise control over Miller. Plaintiff makes no claim that Telecare was negligent in releasing Miller from hospitalization. As we discuss below, Telecare had no duty to plaintiff or her husband under the *Rowland v. Christian* balancing factors. Thus, this is not a case in which Telecare had a duty to control Miller.

B. Duty Pursuant to *Rowland v. Christian* Factors

" 'The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.]' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57.) " ' "[D]uty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts [(3d ed. 1964)] at pp. 332-333.)" (*Dillon v. Legg* (1968) 68 Cal.2d 728, 733.)

Civil Code section 1714 provides in relevant part that a person is responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." " ' "[W]henever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct . . . he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." ' " (*Tarasoff, supra,* 17 Cal.3d at p. 434.) Since no want of care on the part of Telecare *caused* injury to plaintiff or to Eric McGhee, we must look further to determine whether Telecare breached a duty to plaintiff.

Any departure from the above fundamental principle requires a court to determine whether a duty exists by considering several factors, including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of

9

the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian, supra,* 69 Cal.2d 108, 113; *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 750.) "[I]n the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Rowland v. Christian, supra,* 69 Cal.2d at p. 112.)

1. Foreseeability of Harm

The most important of the considerations is foreseeability. (*Tarasoff, supra*, 17 Cal.3d at p. 434.) In determining whether a particular harm is foreseeable, we do not consider a particular defendant's conduct, but generally whether the category of conduct alleged is sufficiently likely to result in the kind of harm experienced such that liability should be imposed. (*Elsheref v. Applied Materials, Inc*. (2014) 223 Cal.App.4th 451, 459-460.) However, "[f]oreseeability supports a duty only to the extent the foreseeability is reasonable." (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 306.)[6]

The question here is whether it is reasonably foreseeable that a patient who has been released from a 72-hour hold and is known to have a firearm, will shoot and kill someone. While it is certainly imaginable that such a harm will occur, that does not equate to a legally foreseeable harm. "[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone

---

[6]  Plaintiff's motion for judicial notice is granted as to Telecare's answer to the original complaint, and denied as to Miller's record of contacts with Placer County law enforcement.

provides a socially and judicially acceptable limit on recovery of damages for that injury." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 668.) " '[P]olicy considerations may dictate a cause of action should not be sanctioned *no matter how foreseeable the risk*.' [Citation.]" (*Parsons v. Crown Disposal Co*. (1997) 15 Cal.4th 456, 476.)

Under the present circumstances, the Legislature has given a clear indication of when it deems harm to be foreseeable enough to require a person providing psychotherapy services to take affirmative action to warn others about the patient. Only when the patient has made a "serious threat of physical violence against a reasonably identifiable victim or victims" is the harm sufficiently foreseeable to impose liability. (Civ. Code, § 43.92.) We accept that limitation on foreseeablity here.

   2.  Degree of Certainty That Plaintiff Suffered Injury and
       Closeness of the Causal Connection

The imposition of a duty under the circumstances of this case is inadvisable because of the particular action plaintiff is alleging Telecare should have taken. Plaintiff does not claim that Telecare should have warned her husband or law enforcement that Miller was dangerous, or should have detained Miller for the same reason. The conduct that plaintiff claims was negligent was Telecare's failure to notify local law enforcement that Miller had a gun, or to notify Eric McGhee that Miller could not legally possess a gun. The connection between Telecare's conduct and the injury suffered is too attenuated to impose liability. The failure to notify local law enforcement or the victim that Miller had a gun is not closely connected to the killing, when there is no allegation Telecare knew Miller had threatened Eric McGhee. Furthermore, Eric McGhee knew that Miller had a gun and that he had been placed on a 72-hour hold. It is unlikely that the tragic outcome here would have been different had Eric McGhee also known, if in fact he did not, that Miller could not legally possess the gun. While there is no doubt that Eric McGhee suffered death at the hands of Miller, there is not a close connection between the

11

conduct of Telecare (Miller's mental health provider) and the injury suffered by Eric McGhee.

### 3. Moral Blame

The moral blame factor describes "a defendant's culpability in terms of the defendant's state of mind and the inherently harmful nature of the defendant's acts. . . . [C]ourts have required a higher degree of moral culpability [than the moral blame attending ordinary negligence] such as where the defendant (1) intended or planned the harmful result [citation]; (2) had actual or constructive knowledge of the harmful consequences of their behavior [citation]; (3) acted in bad faith or with a reckless indifference to the results of their conduct [citations]; or (4) engaged in inherently harmful acts [citation]." (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270.) Telecare's conduct in this case had none of these characteristics of moral blame. Telecare gave notification to the Department of Justice as it was statutorily required to do. No other notice was required by statute, and failure to give notice was not inherently harmful or reckless.

### 4. Policy of Preventing Future Harm, Extent of Burden to Defendant, and Consequences to the Community

The policy of preventing future harm does not necessarily weigh in favor of imposing a duty to notify law enforcement and warn others. Requiring such notification would not necessarily prevent future harm. There is no certainty that law enforcement would have the manpower to respond to every notification, or have the ability to confiscate a person's weapons. Furthermore, imposing a duty to warn Eric McGhee in this case is particularly unreasonable, since he was neither a family member nor a person Miller had threatened.

Also, there is a countervailing policy of client confidentiality, as evidenced by the statutory psychotherapist-patient privilege (Evid. Code, §§ 1010 *ff.*), the statutory provisions making information and records obtained in the course of a 72-hour hold

12

confidential information (§ 5328), and the federal Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d et seq.), which was enacted to protect the integrity and confidentiality of personal medical records and prevent their unauthorized disclosure. (*Bugarin v. Chartone, Inc*. (2006) 135 Cal.App.4th 1558, 1561-1562.) The countervailing policy of privacy in one's mental health records weighs against disclosure to law enforcement and others.

The Legislature has spoken in terms of the notifications required under these circumstances. Telecare was required to, and did, notify the Department of Justice. This situation involves mental health care and the privacy rights of the patient, and is fraught with competing policy concerns. The matter ought to be left to the Legislature to determine what notification is required.

5. Availability, Cost, and Prevalence of Insurance

Although insurance may be available to cover the risk of not notifying law enforcement in this circumstance, this factor has little relevance where we have concluded the other factors weigh against imposition of a duty.

Telecare had no duty to control the actions of Miller, since he was not a patient at the time of the shooting, and there is no allegation Telecare should have kept Miller institutionalized. Telecare also had no duty, either by statute or common law, to notify anyone other than the Department of Justice that Miller was in possession of a weapon in violation of the law.[7]

---

[7]  Telecare's unopposed motion for judicial notice of: (1) certain legislative history pertaining to the illegal possession of firearms by prohibited persons; and (2) Placer County resolutions regarding HIPPA regulations, is granted.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____/s/_____
Blease, Acting P. J.


We concur:


_____/s/_____
Mauro, J.


_____/s/_____
Hoch, J.