[No. 53809-8-I. Division One. February 14, 2005.]

RONALD LUNSFORD, ET AL., *Appellants*, v. SABERHAGEN HOLDINGS, INC., ET AL., *Respondents*.

---

*David A. Stewart* (of *Jeffrey Long Associates*) and *Zachary B. Herschensohn* (of *Brayton Purcell*) ( *Lloyd F. LeRoy* and *Gilbert L. Purcell*, of counsel), for appellants.

*Timothy K. Thorson* and *Neal J. Philip* (of *Carney Badley Spellman*), for respondents.

¶1 COLEMAN, J. — Manufacturers and sellers of unreasonably dangerous products are strictly liable for injuries to users and consumers of those products. RESTATEMENT (SEC-

OND) OF TORTS § 402A cmt. c (1965). Here, Ronald Lunsford argues that a supplier of asbestos-containing products should be strictly liable for injuries caused by his childhood exposure to asbestos dust brought home by his father who worked as an insulation installer. The trial court granted the manufacturer's motion for summary judgment, concluding, as a matter of law, that Lunsford was not a user of the manufacturer's product. We reverse the trial court's order granting summary judgment and remand for further proceedings.

## FACTS

¶2 Ronald Lunsford suffers from mesothelioma. Lunsford was exposed to asbestos over a number of years from a variety of sources. At issue in this case is Lunsford's secondary exposure to asbestos as a child. Lunsford's father worked for the Brower Company at a Texaco refinery in Anacortes, Washington in 1958. Lunsford alleges that Brower is a predecessor of Saberhagen Holdings, Inc., and Brower provided asbestos-containing insulation for the refinery. Lunsford asserts that his father would return home from work with asbestos dust on his clothes, hat, vehicle, and tools, and that Lunsford was exposed to that dust.

¶3 Lunsford and his wife sued Saberhagen under theories of negligence, strict liability, false representation, and loss of consortium. Saberhagen moved for partial summary judgment, arguing that as a matter of law, Saberhagen was not strictly liable for Lunsford's injuries. Saberhagen argued that Lunsford is not a user under the *Restatement (Second) of Torts* § 402A.[1] The trial court granted Saberhagen's motion for summary judgment on the issue of strict liability and denied Lunsford's motion for reconsideration. Lunsford appeals.

---

[1] For the purposes of its summary judgment motion, Saberhagen admitted that Lunsford's father was actually exposed to asbestos products supplied or installed by its predecessor and that that exposure caused Lunsford's injuries.

## STANDARD OF REVIEW

¶4 We review an order granting summary judgment de novo, making the same inquiry as the trial court. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

## ANALYSIS

¶5 In *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), the Washington Supreme Court adopted the *Restatement (Second) of Torts* § 402A, which provides for strict liability for manufacturers of unreasonably dangerous products:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his [or her] property, if:

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his [or her] product, and

(b) the user or consumer has not bought the product from or entered into any contractual relationship with the seller.

The court extended the rule to apply strict liability to product sellers in *Seattle-First National Bank v. Tabert*, 86 Wn.2d 145, 542 P.2d 774 (1975). The essence of this rule is that:

"[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. . . .

" . . . .

" . . . To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the [product] in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the [product] unsafe for its intended use."

*Tabert*, 86 Wn.2d at 147 (quoting *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 62, 64, 377 P.2d 897, 27 Cal. Rptr. 697 (1963)). The doctrine of strict liability is premised on a policy decision that the manufacturers of products are better able to bear the costs associated with injuries from their products. RESTATEMENT (SECOND) OF TORTS § 402A cmt. c. The drafters of section 402A did not express an opinion as to whether section 402A should apply to bystanders. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. o.[2]

¶6 The precise issue here is whether the trial court erred in determining, as a matter of law, that Lunsford is not a user under Washington law. Saberhagen argues that under a strict interpretation of the language of the *Restatement*, a bystander or person in Lunsford's position would not fall within the protection of strict liability. Policy considerations, however, support an expansion of coverage to include bystanders and other persons that the manufacturer could reasonably foresee would come into contact with its product.

¶7 There are no Washington cases that have addressed whether a bystander or a person in Lunsford's position is a

---

[2] The comment reads:

Thus far the courts, in applying the rule stated in this Section, have not gone beyond allowing recovery to users and consumers, as those terms are defined in Comment *l*. Casual bystanders, and others who may come into contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons.

user for the purposes of section 402A. There are cases, however, that discuss strict liability in the context of an injured bystander. While we do not cite these cases as precedent, they do show that there is at least an assumption that a person in Lunsford's position may bring suit under a theory of strict liability in Washington.[3]

¶8 Additionally, other states have expanded coverage under strict liability to bystanders. One court noted that courts in California, Michigan, Texas, Indiana, Maryland, Arizona, and Ohio had applied strict products liability to bystander injuries. *Valk Mfg. Co. v. Rangaswamy*, 74 Md. App. 304, 537 A.2d 622 (1988).

¶9 For example, in *Stegemoller v. AC&S, Inc.*, 767 N.E.2d 974 (Ind. 2002), the Indiana Supreme Court held that the wife of a union installer was a user under Indiana's Product Liability Act (Act). Under the Act, a consumer includes "any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use . . . ." *Stegemoller*, 767 N.E.2d at 975. Stegemoller alleged that she was exposed to

---

[3] In *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987), the Washington Supreme Court determined that there was sufficient evidence to give the issue of strict liability to the jury. There, Lockwood worked at a number of shipyards where asbestos products were used. Although Lockwood did not work directly with asbestos, he was exposed to asbestos dust as part of his job. Lockwood sued a number of parties, including an asbestos manufacturer, on theories of strict liability and negligence. Although the precise issue of whether Lockwood was a "user" for strict liability purposes was not raised, the court did discuss his exposure to asbestos as a bystander. The court concluded that the evidence was sufficient to submit the question of strict liability to the jury. While this case does not specifically address the issue of whether a manufacturer can be held strictly liable for injuries to a bystander, the case assumes as much, at least in the context of an employee who is exposed to asbestos indirectly at work.

Additionally, Division Two discussed strict liability with regard to a bystander in *Novak v. Piggly Wiggly Puget Sound Co.*, 22 Wn. App. 407, 591 P.2d 791 (1979). There, Andrew Novak was injured when his friend shot a BB gun and the BB ricocheted, hitting Novak in the eye. Novak, through his guardian ad litem, sued the manufacturer of the BB gun for both negligence and strict liability. The court held that the gun was not unreasonably dangerous and that the manufacturer provided adequate warnings. The court did not question Novak's ability to bring a strict liability claim against the BB gun manufacturer as a bystander. While *Novak* does not deal directly with the issue of whether a bystander is a "user" for the purposes of strict liability, it implies that a person in Lunsford's position may sue a manufacturer for injuries under a theory of strict liability.

asbestos when she washed her husband's clothes, which were covered in asbestos dust. The court held that "the reasonably expected use of asbestos products encompasses the cleansing of asbestos residue from one's person and clothing at the end of the workday." *Stegemoller*, 767 N.E.2d at 975. The court also rejected the argument that Stegemoller was not a bystander because she was not near her husband when he was installing the product. "This is too narrow a view. The normal, expected use of asbestos products entails contact with its migrating and potentially harmful residue. We conclude that divorcing the underlying product from fibers or other residue it may discharge is not consistent with the Act." *Stegemoller*, 767 N.E.2d at 976.

¶10 Additionally, the Court of Appeals of Texas extended the coverage of strict liability to bystanders in *Fuller-Austin Insulation Co. v. Bilder*, 960 S.W.2d 914 (Tex. App. 1998). There, Bilder lived with her stepfather, who was an insulation installer. She was exposed to asbestos dust when she washed his clothes and cleaned up the dust shaken from his clothes. The appellate court concluded that the trial court correctly instructed the jury on the issue of marketing defect:

> Recovery under the strict liability doctrine is not limited to users and consumers. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex. 1969). The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risk of personal injury and/or property damage. *Id.* Bystanders may recover for personal injuries or wrongful death caused by exposure to asbestos. *See Owens-Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712 (Tex. App.—Dallas 1997, no writ). Consequently, we reject Fuller's argument that it is not liable to Mrs. Bilder because she was not an actual or foreseeable user of asbestos.

*Bilder*, 960 S.W.2d at 918.

¶11 On the other hand, Saberhagen points to *Rohrbaugh v. Owens-Corning Fiberglas Corp.*, 965 F.2d 844 (10th Cir. 1992), where the Tenth Circuit held that the wife of an

insulation installer was not a foreseeable user who the manufacturer had a duty to warn under Oklahoma law:

> Under Oklahoma law, a manufacturer may have a duty to warn consumers of potential hazards which occur from the use of its product. *McKee v. Moore*, 648 P.2d 21, 23 (Okla. 1982). A failure to warn may result in a product being defective and unreasonably dangerous. *Id*. This duty to warn, however, only extends to ordinary consumers and users of the products. *See Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 774 (Okla. 1988). The *Woods* court defined "ordinary consumer" as "one who would be foreseeably expected to purchase the product involved." *Id*.
>
> Applying these standards to the facts in this case, we find that Appellants did not have a duty to warn Mrs. Palmer of the dangers associated with their products because Mrs. Palmer was not a foreseeable purchaser or user of the product. Appellants could not have foreseen that Mrs. Palmer would be exposed to their products in the manner in which she was. It is undisputed that Mrs. Palmer was never exposed to asbestos as a user or present where the product was used. Her exposure to asbestos dust, it is asserted, was brought about by contact with her husband's work clothes. To hold that Appellants could reasonably foresee that Mrs. Palmer would be affected by their products would be an overextension of Oklahoma manufacturer's products liability law.

*Rohrbaugh*, 965 F.2d at 846-47.

¶12 Given the lack of clear authority and the literal language of section 402A, policy considerations are key in determining whether strict liability should extend to injuries to plaintiffs like Lunsford. The American Law Institute discussed the policy reasons for imposing strict liability:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for

consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper person to afford it are those who market the products.

RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (1965). These policy rationales support application of strict liability to a household family member of a user of an asbestos-containing product, if it is reasonably foreseeable that household members would be exposed in this manner. Thus, the question for the jury would be whether it was reasonable for the manufacturer to foresee that Lunsford would be exposed to its product through his father. We hold that the trial court erred in determining, as a matter of law, that Lunsford was not a user or consumer of Saberhagen's product. Our decision does not in any way relieve Lunsford of his burden of showing that it was foreseeable that he would come into contact with Saberhagen's product, that Saberhagen's product was unreasonably dangerous, and that he was injured by the product.

■ ¶13 Saberhagen makes two additional arguments for the first time on appeal. Saberhagen argues that strict liability should not apply in Lunsford's case because the court's adoption of section 402A should not be given retroactive treatment. Additionally, Saberhagen argues that section 402A does not apply because the product underwent a substantial change before it reached Lunsford. Neither of these arguments was presented to the trial court, and therefore, we will not address the arguments here. The parties may raise these issues before the trial court on remand.

GROSSE and SCHINDLER, JJ., concur.

Reconsideration denied March 28, 2005.