# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TEELA BAUER, as guardian of the PERSON and ESTATE OF MILO BAUER, a minor child; and TEELA BAUER and THOMAS BAUER, individually, | No. 87593-1-I |
| Respondents, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| THE BOEING COMPANY, | |
| Petitioner, | |
| EXOTIC METALS FORMING COMPANY LLC; GIDDENS INDUSTRIES, INC., d/b/a CADENCE AEROSPACE GIDDENS OPERATIONS; HYTEK FINISHES CO.; NEWCO, INC., d/b/a NEWCO COLUMBIA DISTRIBUTION COMPANY; and TORAY COMPOSITE MATERIALS AMERICA, INC. f/k/a TORAY COMPOSITES (AMERICA), INC., | |
| Defendants. | |

BIRK, J. — Teela Bauer brought this personal injury case on behalf of her son, Milo,[1] along with claims asserted individually by her and her husband Thomas against, among other defendants, The Boeing Company. The Bauers allege that, because of Boeing's negligence, Thomas's work at its manufacturing plant

---

[1] To avoid confusion, we refer to the plaintiffs individually by their first names and collectively as "the Bauers." We intend no disrespect.

exposed him to hazardous materials damaging his reproductive system and his subsequently conceived son, Milo, was born with significant birth defects as a result. Boeing filed a CR 12(b)(6) motion to dismiss Milo's claims on the grounds that it did not owe Milo a duty of care because he was not yet conceived when Boeing allegedly damaged Thomas's reproductive system.

The superior court denied Boeing's motion to dismiss and certified two questions to this court for discretionary review. The questions posed ask (1) whether Washington law recognizes a duty on the part of an employer to the not-yet-conceived offspring of its employees (i.e., a "preconception" duty), and (2) if so, whether a claim for breach of such a duty is barred by the exclusivity provision of the Washington Industrial Insurance Act (IIA), title 51 RCW, when it arises from an occupational disease that impairs the employee's reproductive system.

We answer the first question, yes. Subject to the limits of foreseeability, an employer may be liable for negligence towards an employee's not yet conceived offspring. We answer the second question, no. When the not yet conceived offspring of an employee suffers a separate and distinct injury, even though causally connected to the employee's employment, the exclusivity provision of the IIA does not bar the child's claim. We affirm.

I

Boeing sought and obtained discretionary review after the superior court denied its CR 12(b)(6) motion for dismissal. As such, we must examine the pleadings and determine if there is any set of facts, consistent with the complaint,

which would entitle the Bauers to relief. <u>Woodward v. Taylor</u>, 184 Wn.2d 911, 917, 366 P.3d 432 (2016). The facts below are alleged in the Bauers' complaint.

Thomas is an electrical installer for Boeing at its manufacturing plant in Everett, Washington. He has worked at Boeing since 2011. As part of his work at Boeing, Thomas is regularly exposed to "a mixture of chemicals that, individually and collectively, are capable of harming the unborn child and future offspring, including through genetic, epigenetic and/or other mechanisms that damage sperm and/or otherwise impair the processes of conception and pregnancy." These chemicals include volatile organic solvents and heavy metals to which Thomas is exposed though inhalation, ingestion, and dermal contact.

While working at Boeing's Everett facility, Thomas conceived a child, Milo. Milo was born in 2017. Milo was born with permanent and disabling birth defects, including "congenital heart anomalies, ventricular septic defect, tricuspid atresia, pulmonary stenosis, vacterl syndrome, congenital hip dysplasia, ano-rectal malformation, urethral duplication, and spinal tethering."

Since the 1970s, peer reviewed epidemiological studies in medical literature have reported significant associations between paternal exposures to workplace chemicals and birth defects. Since at least 1980, scientists have recognized that paternal exposure to chemicals can cause genetic damage in an unborn child. In 1999, the State of Washington published a booklet on the effects of workplace hazards, including organic solvents, to reproduction, acknowledging that preconception exposure in men may affect the development of a child.

Throughout the 1980s and 1990s, Boeing toxicologists monitored scientific research on chemically induced birth defects. According to one Boeing corporate representative, no later than 1984, Boeing was aware that paternal exposures to workplace chemicals could cause birth defects. Starting in 1986, Boeing toxicologists maintained an internal list of chemicals that caused developmental toxicity. The 1986 version of this list identified chemicals which Thomas worked with and around. In a 1986 memorandum, a Boeing epidemiologist identified exposure, for both men and women, to certain chemicals with adverse reproductive outcomes. In 1996, a Boeing toxicologist wrote several memoranda on the potential for paternal exposure to organic solvents causing birth defects.

The Bauers alleged that Thomas reasonably relied on Boeing's superior knowledge of potential hazards in the workplace, its ability to inform, educate, and warn of potential hazards, and its ability to enforce appropriate safety measures and procedures. In their claim for negligence, the Bauers asserted, among other things, that Boeing owed them a duty of reasonable care and among the ways it had breached that duty, Boeing failed to provide adequate warnings, education, and training, to prevent chemical exposures, to monitor, and to investigate.

Boeing filed a motion to dismiss, arguing that it did not owe Milo a duty of care and that regardless, the claim was barred under the IIA. The superior court denied Boeing's motion. The superior court granted Boeing's motion to certify to this court the two questions quoted above. A commissioner of this court granted discretionary review.

4

II

We review CR 12(b)(6) rulings de novo.  Atchison v. Great W. Malting Co., 161 Wn.2d 372, 376, 166 P.3d 662 (2007).  We review certified questions of law de novo.  Rowe v. Klein, 2 Wn. App. 2d 326, 332, 409 P.3d 1152 (2018).

III

Boeing argues that Washington law does not recognize a preconception duty in the employment context.  It argues that if Washington recognized a preconception duty in the employment context, it would "create a host of practical problems."  Boeing's emphasis on "preconception duty" arbitrarily limits the focus of its analysis.  The relevant inquiry is not whether a preconception duty can ever be owed in the employment context, but whether our standards support that Boeing owed Milo a duty of care—they do—and whether Milo was a foreseeable plaintiff—he was.

A

In an action for negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause.  Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996).  The existence and scope of a duty are questions of law. Centurion Props. III, LLC v. Chicago Title Ins. Co., 186 Wn.2d 58, 65, 375 P.3d 651 (2016).  A duty of care is " 'an obligation to which the law will give full recognition and effect, to conform to a particular standard of conduct toward another.' "  Affil. FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (internal quotation marks omitted) (quoting Transamerica

5

Title Ins. Co. v. Johnson, 103 Wn.2d 409, 413, 693 P.2d 697 (1985)). In determining whether a duty of care exists, and the scope of that duty, we weigh considerations of logic, common sense, justice, policy, and precedent. Volk v. DeMeerleer, 187 Wn.2d 241, 263, 386 P.3d 254 (2016). If a duty exists, it " 'is a reflection of all those considerations of public policy which lead the law to conclude that a plaintiff's interests are entitled to legal protection against the defendant's conduct.' " Affil. FM, 170 Wn.2d at 450 (internal quotation marks omitted) (quoting Taylor v. Stevens County, 111 Wn.2d 159, 168, 759 P.2d 447 (1988)). When examining precedent, we analyze whether past Washington decisions or the decisions of neighboring jurisdictions support the finding of a duty. Centurion Props., 186 Wn.2d at 65. When we decide that a duty is owed, the duty is limited, "like any other duty, by the element of foreseeability." Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460, 480, 656 P.2d 483 (1983). We address each consideration and the role of foreseeability in turn.

1

First, we consider precedent. Centurion Props., 186 Wn.2d at 66. Boeing argues that Washington law has recognized a duty to a not-yet-conceived person in only one case, Harbeson, 98 Wn.2d at 479-80, which Boeing says confined the duty to the context of reproductive healthcare. To support its position, Boeing cites Pacheco v. United States, 200 Wn.2d 171, 180, 515 P.3d 510 (2022). Boeing further argues that we should follow a California case, Elsheref v. Applied Materials, Inc., which it argues stands for the proposition that an employer does not owe a duty to its employee's not-yet-conceived child. 223 Cal. App. 4th 451,

167 Cal. Rptr. 3d 257 (2014). We are not persuaded. Harbeson did not limit itself to the reproductive healthcare context, Pacheco did not later limit Harbeson's holding, and California case law does not support Boeing's position. Harbeson and Washington take-home asbestos exposure cases support our conclusion that Boeing owed Milo a duty of care.

In Pacheco, a health care provider mistakenly gave the patient an injection different from the contraceptive that was intended, leading to the birth of a child with a congenital defect and permanent disabilities. 200 Wn.2d at 176-77. The court held that healthcare providers may be liable for damages relating to a child's condition "where negligent contraceptive care results in the birth of a child, and that child has a congenital defect," and this was true even though the patient had not sought medical care to prevent conceiving a child later born with birth defects. Id. at 176, 180. The Pacheco court emphasized reproductive healthcare in its discussion of Harbeson because of the nature of Pacheco's claims. Pacheco, 200 Wn.2d at 177-78, 186-87. After critically discussing earlier terminology and adopting the umbrella term "negligent reproductive healthcare," id. at 185-89, Pacheco reaffirmed Harbeson, in language that did not limit it, explaining "no one suggests that we should disavow Harbeson now, and the approach we took there shows a clear intent to apply negligence principles equitably and in accordance with Washington public policy." Pacheco, 200 Wn.2d at 187.

Harbeson recognized two new claims, wrongful birth and wrongful life. 98 Wn.2d at 462. The case was brought by a plaintiff who was prescribed Dilantin by her doctors, and who took it during three pregnancies. Id. at 462-63. Because of

birth defects in their children, the plaintiff argued that they would not have had more children if they had been informed of the potential risk of birth defects. Id. at 463. For the wrongful life claim, the court said, "The first potential difficulty with [the duty element] of a wrongful life action is that in every case the alleged negligent act will occur before the birth of the child, and in many cases (including the one before us) before the child is conceived." Id. at 480. After acknowledging other jurisdictions that had recognized a duty in such contexts, the court stated, "We now hold that a duty may extend to persons not yet conceived at the time of a negligent act or omission. Such a duty is limited, like any other duty, by the element of foreseeability." Id. The court did not confine this duty to the reproductive healthcare context, but instead to those contexts which are foreseeable, "[a] provider of health care, *or anyone else*, will be liable only to those persons foreseeably endangered by this conduct." Id. (emphasis added).

Boeing urges us to follow out-of-state authority, Elsheref, 223 Cal. App. 4th 451. In Elsheref, the plaintiff's father worked as an engineer at a semiconductor facility. 223 Cal. App. 4th at 453-54. The plaintiff was born with birth defects allegedly caused by his father's exposure to toxic chemicals at his work. Id. at 454. The court acknowledged that "no California court ever has determined that a defendant who is neither a medical professional nor a product manufacturer owed a duty to a subsequently conceived child," but because "existence of a duty is determined on a case-by-case basis," the court analyzed whether the employer owed the plaintiff a duty of care. Id. at 459. Based on a multifactor test, the court found that some factors weighed in favor of finding a duty, while others weighed

8

against the finding, but it concluded that imposing a duty would burden the employer with an unpredictable and overly expansive scope of potential liability. Id. at 460-61. Elsheref relied on Oddone v. Superior Court, 179 Cal. App. 4th 813, 822, 101 Cal. Rptr. 3d 867 (2009).

Oddone held that an employer owed no duty to its employee's spouse who was injured by take-home toxic chemical exposure because it would impose a liability risk of "uncertain but potentially very large scope," 179 Cal. App. 4th at 816. But this was later disapproved of in Kesner v. Superior Court, 1 Cal. 5th 1132, 1156, 384 P.3d 283, 210 Cal. Rptr. 3d 283 (2016). Kesner held that employers and premises owners have a duty to exercise reasonable care in their use of asbestos that includes preventing exposure to asbestos carried by on-site workers to members of a worker's household. Id. at 1140. Kesner disapproved of Oddone's holding because the risk of "potentially massive" burdens on defendants did "not clearly justify a categorical rule against liability for foreseeable take-home exposure." Id. at 1154. Instead, the court limited duties owed to foreseeable plaintiffs, holding "the foreseeability of take-home exposure and associated risk of injury are at their maximum when it comes to members of an employee's household." Id.

Though Kesner did not concern a plaintiff that was not yet conceived at the time of injury, it did concern an employer's duty to the employee's family outside of work because they are "persons who live with the worker and are thus foreseeably in close and sustained contact with the worker over a significant period of time." Id. at 1154-55. Washington courts have recognized liability for asbestos

9

exposure for take-home exposure to an employee's family in comparable settings. In Lunsford v. Saberhagen Holdings, Inc., 125 Wn. App. 784, 787, 793, 106 P.3d 808 (2005), we extended the strict liability of a manufacturer or seller of asbestos containing products to the child of a worker who carried asbestos home from the workplace. In Arnold v. Saberhagen Holdings, Inc., 157 Wn. App. 649, 653, 666-68, 240 P.3d 162 (2010), we recognized a duty by a shipyard operator to prevent take-home asbestos exposure to household members of the employee of an independent contractor. We recognized claims based on a general contractor's responsibility for job site safety, id. at 664-66 (citing Kelley v. Howard S. Wright Constr. Co., 90 Wn.2d 323, 331-32, 582 P.2d 500 (1978)), and based on a landowner's duty to invitees, id. at 667-68.

Harbeson held that a duty can be owed to someone not yet conceived at the time of a negligent act, whether they are a healthcare provider, "or anyone else." 98 Wn.2d at 480. Our decisions in Lunsford and Arnold, as well as the California Supreme Court's decision in Kesner, recognize the foreseeability of a worker carrying workplace hazards home to their immediate household. This is true for children that workers have and for those that they will have. Because Harbeson is not restricted to the reproductive healthcare context, because Elsheref is both non-binding and of questionable continuing validity, and because of our decisions holding employers liable for take-home exposure to a worker's family, precedent supports the conclusion that Boeing owed Milo a duty of care.

2

Second, we consider public policy. Centurion Props., 186 Wn.2d at 79. Washington public policy supports protecting the health and safety of workers. Article II, section 35 of the Washington Constitution, states, "The legislature shall pass necessary laws for the protection of persons working in mines, factories and other employments dangerous to life or deleterious to health; and fix pains and penalties for the enforcement of the same." This constitutional provision "constitutes a fundamental right of Washington workers to health and safety protection." Martinez-Cuevas v. DeRuyter Bros. Dairy, Inc., 196 Wn.2d 506, 520, 475 P.3d 164 (2020).

Recognizing liability here accords with traditional principles of tort law to spread the toll of individual injuries across the industry rather than allow them to fall entirely upon those who are injured. This is a recognized purpose of holding product manufacturers strictly liable for the injuries caused by their product, because " 'public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained.' " Lunsford, 125 Wn. App. at 792-93 (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. c (Am. Law Inst. 1965)). We consider a claim against Boeing based on negligence, rather than strict liability, but in this instance the context is substantially similar in that recognizing liability, here conditioned on Milo's proving Boeing's fault, has the effect of spreading the cost of careless use of hazardous chemicals in the industry.

11

Based on the facts alleged in the complaint, Thomas's employment at the Boeing manufacturing plant was "dangerous to life or deleterious to health." CONST. art. II, § 35. Public policy favors protecting Thomas's health and safety, including his reproductive health, because of the nature of his employment.

3

Third, we consider common sense, logic, and justice. Centurion Props., 186 Wn.2d at 82. Boeing asserts that if we recognize that it owed a duty to Milo it "would create a host of practical problems," including an "unpredictable and potentially unlimited downstream liability for employers," employers "interrogating their employees" about plans for procreation, "forcing employers to defend against stale claims," an increased "volume of potentially meritless litigation," and claims involving "complicated scientific and medical inquiries." Boeing's arguments do not excuse it from owing a duty of reasonable care to Milo.

Employers need not inquire into their employees' plans for reproduction to satisfy their duty of care. They need only "fully inform" their employees of the risks and not act negligently. Meyer v. Burger King Corp., 144 Wn.2d 160, 170, 26 P.3d 925 (2001). Boeing's concerns about defending against stale claims, complex claims, and meritless litigation do not excuse it from owing duties of care. "The burden remains on the plaintiff to prove negligence." Id. "[D]ifficulty of proof does not prevent the assertion of a legal right." Id. Boeing can assert defenses against stale or meritless claims, but the possibility of those claims arising does not call for a categorical rule prohibiting duties owed to an employee's future children. See Affil. FM, 170 Wn.2d at 454 ("We are aware of the economic drawbacks of the

12

dangers of creating 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.' " But "economic concerns about liability run amok are overstated and can be addressed through conventional concepts of the measure and scope of a duty of care." (quoting Ultramares Corp. V. Touche, 255 N.Y. 170, 179, 174 N.E. 441 (1931)).

"As a general rule, 'every actor whose conduct involves an unreasonable risk of harm to another is under a duty to exercise reasonable care to prevent the risk from taking effect.' " Parrilla v. King County, 138 Wn. App. 427, 436, 157 P.3d 879 (2007) (internal quotation marks omitted) (quoting Minahan v. W. Wash. Fair Ass'n, 117 Wn. App 881, 897, 73 P.3d 1019 (2003)). In Harbeson, the court recognized that physicians breached their duty of care to not yet conceived children when they failed "to take reasonable steps to determine the danger of prescribing Dilantin for their mother." 98 Wn.2d at 481. Like in Harbeson, Boeing owed Milo a duty of reasonable care. The exact timing of the risk—whether the damaging chemical exposures occurred before or after conception—is not dispositive. If Boeing's conduct involves an unreasonable risk of injury to workers' children, the timeline bears little import to the existence of a duty.

4

The final issue in our duty analysis is the scope of Boeing's duty of care. Maintaining that it did not owe Milo a duty of care, Boeing argues that foreseeability

sets limits on duty. Boeing is correct that foreseeability sets limits on an established duty, but Milo was a foreseeable plaintiff.

> "Foreseeability is . . . one of the elements of negligence; it is more appropriately attached to the issues of whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent."

McKown v. Simon Prop. Grp., Inc., 182 Wn.2d 752, 763, 344 P.3d 661 (2015) (alteration in original) (internal quotation marks omitted) (quoting Maltman v. Sauer, 84 Wn.2d 975, 980, 530 P.2d 254 (1975). As it bears on whether a duty is owed, foreseeability requires that "the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant." Maltman, 84 Wn.2d at 980-81; accord Aucoin v. C4Digs, Inc., 32 Wn. App. 2d 103, 121, 555 P.3d 884 (2024), review denied, 4 Wn.3d 1012, 564 P.3d 552 (2025). If Boeing's conduct involved an unreasonable risk of harm to others, then it was under a duty to exercise reasonable care to prevent harm within the hazards involving that unreasonable risk.

In practice, Washington courts have found the absence of a duty where the court could determine as a matter of law that the plaintiff's harm was outside the hazards with respect to which the defendant was negligent. Maltman, 84 Wn.2d at 980-81 (no duty by driver negligently causing an automobile accident to occupants of helicopter that crashed while responding to the automobile accident). In contrast, in Harbeson, the court held that the defendant owed a duty of care to the plaintiffs' not yet conceived children and that the injuries to those children were

14

foreseeable. 98 Wn.2d at 480-81. The defendant knew of the parents' intention to have children, therefore prescription drugs that could injure any future children created a foreseeable risk of injury. Id. at 481. In McKown, a mall owner's duty of care to victims of a mass shooting arose "only 'when such conduct is foreseeable based on past experience of prior similar acts.' " Pacheco, 200 Wn.2d at 190 (quoting McKown, 182 Wn.2d at 757). And in Schooley v. Pinch's Deli Market, Inc., minors purchased alcohol from a commercial vendor and then shared it with their underaged peers, one of whom drank too much, was injured, and later sued the commercial vendor. 80 Wn. App. 862, 864, 912 P.2d 1044 (1996), aff'd, 134 Wn.2d 468, 951 P.2d 749 (1998). The court held that a "commercial vendor's duty to exercise reasonable care when selling alcohol to possible minors is bounded by foreseeability, and that the class protected by such duty includes those minors foreseeably put at risk by the vendor's conduct." Id. at 874, 877.

Washington has recognized a duty of care for employers to exercise reasonable care in preventing harm to workers' immediate family members from hazardous workplace exposures. See Lunsford, 125 Wn. App. at 793; Arnold, 157 Wn. App. at 653, 666-68. These cases do not demand that the defendant in control of the workplace hazard know that a specific worker has household members who may be exposed but turn on the fact that it is foreseeable that workers, in general, have household members who may be exposed. It is just as foreseeable that workers, in general, will conceive children within their household. Harbeson held that a duty of care "may extend to persons not yet conceived at the time of a negligent act or omission." 98 Wn.2d at 480. Milo is the offspring of an employee,

15

Thomas, and his immediate household members were foreseeably exposed to workplace hazards carried home. Moreover, the duty we recognize is inherently limited to the employee's immediate offspring, anchoring it within foreseeable bounds. Cf. Kesner, 1 Cal. 5th at 1140 (limiting duty to household members). Based on the facts alleged in the complaint, Milo was a foreseeable plaintiff.

B

In the Bauers' brief of respondent, relying on Beltran-Serrano v. City of Tacoma, they assert that every individual owes a duty of reasonable care, and that includes a "duty to refrain from directly causing harm to another through affirmative acts of misfeasance." 193 Wn.2d 537, 550, 442 P.3d 608 (2019). In Boeing's reply brief of petitioner, Boeing argues that the Bauers never pleaded misfeasance, and that the Bauers allege only a "failure to act." Boeing contends that a "failure to act," which it describes as "nonfeasance," "cannot be the basis of liability absent a recognized special relationship or voluntary assumption of responsibility to protect – none of which [the Bauers] pleaded as to Milo." The parties misread the case law on misfeasance and nonfeasance, as the distinction is irrelevant to Bauers' claim against Boeing of general negligence.[2]

Misfeasance and malfeasance are relevant to certain tort theories. The distinction between misfeasance and malfeasance was examined by the

---

[2] The pleadings before us assert, and we consider, only a general negligence claim that Boeing failed to exercise reasonable care in its management of workplace hazards, and, as a proximate result, Milo was injured. Kesner upheld such a claim in its context. 1 Cal. 5th at 1156. We do not consider other tort theories, such as premises liability, Arnold, 157 Wn. App. at 666-67, Kesner, 1 Cal. 5th at 1158-59, or other theories, see Fleming v. Stoddard Wendle Motor Co., 70 Wn.2d 465, 467-68, 423 P.2d 926 (1967) (supplier of chattel).

Washington Supreme Court in the context of whether police owed a duty to protect individuals from criminal acts of a third party. Robb v. City of Seattle, 176 Wn.2d 427, 435-37, 295 P.3d 212 (2013). In the early common law one who caused injury by positive affirmative acts committed misfeasance and was generally held liable regardless of fault. Id. at 435-36. In contrast, liability for nonfeasance, harm resulting from a failure to act, was slow to receive recognition under the law. Id. In Robb, the court held that an actor has a duty to protect another from criminal acts of a third party only when there is a special relationship or when the "actor's conduct constitutes misfeasance." Id. at 439. This principle is an application of the general rule that a defendant has no duty to rescue a plaintiff from peril unless the defendant takes some action to increase the peril. Folsom v. Burger King, 135 Wn.2d 658, 676, 958 P.2d 301 (1998). A defendant's misfeasance increasing the risk to the plaintiff, which otherwise exists independent of the defendant's acts, becomes relevant when the plaintiff invokes one of the exceptions to the general principle that a defendant does not have a duty to rescue another from peril.

But where a duty of care exists requiring an actor to use ordinary care for the protection of another against unreasonable risk, misfeasance is not a requirement to find negligence. See Sys. Tank Lines v. Dixon, 47 Wn.2d 147, 151, 286 P.2d 704 (1955) ("[N]egligence consists in the doing of an act which a reasonable [person] would not have done, or in the failure to do an act which a reasonable [person] would have done under similar circumstances."). The Bauers' general negligence claim depends on whether Boeing used reasonable care in its operations posing unreasonable risk to others and proximately caused injury to

17

Milo. See Hunsley v. Giard, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976) (the "very concept of negligence" involves " 'conduct which falls below the standard established by law for the protection of others against unreasonable risk.' " (quoting W. PROSSER, TORTS § 43 at 250 (4th ed. 1971))).

Boeing's assertion that it does not owe a duty to Milo because the Bauers did not plead acts of misfeasance is unavailing.

IV

Boeing argues that Milo's claims are barred by the exclusivity provision of the IIA. RCW 51.04.010 abolishes "all civil actions and civil causes of action" for workplace injuries. Boeing argues that Milo's injuries are derivative of Thomas's, which were workplace injuries, and therefore Milo is barred from recovery under RCW 51.04.010. We are not persuaded. Milo's injuries, though a causal result of injuries suffered by Thomas, are legally independent from Thomas's. Meyer, 144 Wn.2d at 165-69, is dispositive.

The exclusivity provision of the IIA bars claims by family members which are derivative of the worker's injury. Id. at 165 (citing West v. Zeibell, 87 Wn.2d 198, 201-03, 550 P.2d 522 (1976) (IIA barred parents of deceased worker from bringing wrongful death action based on the death of a child); Provost v. Puget Sound Power & Light Co., 103 Wn.2d 750, 753-56, 696 P.2d 1238 (1985) (IIA barred wife and child of injured worker from bringing suit for negligent infliction of emotional distress and loss of consortium)). These family members suffered a "separate harm," but their claims were "based upon the injury suffered by" the worker. Meyer, 144 Wn.2d at 165.

18

In Meyer, a woman who was 35 weeks pregnant was at work when she "lost her footing and struck her lower abdomen on the corner of a table." Id. at 162-63. Later that day she delivered her baby, Patricia. Id. at 163. The mother brought claims on behalf of Patricia against the employer, claiming that the fall had caused placental abruption, which led to a loss of oxygen for Patricia, and that loss of oxygen caused severe injuries to Patricia. Id. The employer argued that the IIA barred any claims by Patricia because her injuries were derivative of the mother's, which she suffered in the course of her employment. Id.

The mother in Meyer did not bring claims for physical injuries to herself, but instead the claims "involve[d] allegations of injury personal to the child." Id. Patricia's alleged injury was "massive brain damage due to oxygen deprivation." Id. The court concluded that Patricia's injuries were "independent from the injuries to her mother." Id. The employer argued that the mother's injuries and Patricia's injuries were causally connected, but the court held that because Patricia's injury was brain damage and the mother's injury was to her womb and placenta, the two were "separate and distinct injuries." Id. at 169. "While the mother and child in utero are physically connected, an injury to one is not necessarily an injury to the other." Id. Simply stated, "The [IIA] does not apply to third parties, family or dependents, who themselves suffer an injury not legally dependent on the employee's injury."[3] Id.

---

[3] In reaching this result, the Washington Supreme Court looked to other jurisdictions that had addressed similar cases and their reasons for reaching similar results. "These jurisdictions unanimously concluded that prenatal injuries are separate, rather than derivative, even when the injury occurs simultaneously with the mother's work-related injuries." Meyer, 144 Wn.2d at 167. The Colorado

Boeing tries to distinguish Meyer, claiming that the injury was to an "infant—who was present at the workplace in utero." Boeing asserts that Milo's injuries, in contrast, are "based entirely on the underlying occupational disease that Thomas Bauer allegedly suffered." "Plaintiffs thus cannot separate Milo's alleged injury from his father's—and thus the exclusivity provision applies." But Boeing's argument is essentially a retread of the same argument rejected in Meyer—that the child's injuries are a causal result of the parent's injuries. 144 Wn.2d at 169.

Meyer and the cases it relied on are all cases involving pregnant mothers who, in the course of their employment, suffered injuries that also injured their unborn children. The case before us is somewhat different, involving a father injured in the course of his employment and a later conceived child whose injuries are a direct result of his father's injuries. But Meyer's reasoning is just as applicable here, with Milo's and Thomas's injuries being causally connected but separate and distinct—Thomas's injury being damage to his reproductive system and Milo's injury being a host of birth defects. Milo's injuries are personal to him,

---

Supreme Court reasoned that despite being injured in the same event, it does "not render the damage to the child derivative of the mother's injury because the child's right of action arises out of the child's own personal injuries." Id. at 168 (citing Pizza Hut of Am., Inc. v. Keefe, 900 P.2d 97, 101 (Colo. 1995)). Hawaii similarly held that an unborn child's injuries are independent of any injury to the worker and that "Hawaii's workers' compensation statute *did not bar* a child from bringing an action against the mother's employer for prenatal injuries, *nor* a claim by the parents for loss of consortium." Id. at 168-69 (citing Omori v. Jowa Hawai'i Co., 91 Haw. 157, 160-02, 981 P.2d 714, aff'd as modified, 91 Haw. 146, 981 P.2d 703 (1999)). A Louisiana court, on similar facts to Meyer, held that the child's injuries did not derive from the mother's because " 'whether mom is there to continue bringing home a pay check or to participate in the child's life has no relevance to this child's alleged brain damage.' " Id. at 167 (quoting Cushing For & on Behalf of Brewer v. Time Saver Stores, Inc., 552 So. 2d 730, 732 (La. Ct. App. 1989)).

they are not derivative of Thomas's. The IIA's exclusivity provision does not bar him from bringing claims against Boeing.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____       _____, ACJ